IN THE COURT OF COMMON PLEAS FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| RESIDENTIAL FINANCE CORP.<br>401 North Front Street<br>Suite 300<br>Columbus, OH 43215<br><br>Plaintiff,<br><br>v.<br><br>MITEL NETSOLUTIONS, INC.<br>c/o statutory agent:<br>The Prentice-Hall Corporation<br>System, Inc.<br>50 W. Broad Street, Suite 1800<br>Columbus, Ohio 43215<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No.:<br><br>10CVH 1 251<br>Judge:<br><br><br>Case Type H |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff Residential Finance Corp. ("RFC"), and for its Complaint against Defendant Mitel Netsolutions, Inc. ("Mitel"), hereby alleges as follows:

1. Plaintiff RFC is an Ohio Corporation and is headquartered in Franklin County Ohio.

2. Defendant Mitel, formerly Inter-Tel Leasing, Inc., is a corporation conducting significant business in Franklin County, Ohio. Mitel maintains an office in Franklin County, Ohio.

3. RFC entered into an agreement with Mitel whereby RFC would lease certain telecommunications equipment from Mitel. As part of the agreement, Mitel was also to provide professional services and support for the entire term of the lease. (*See* Lease Agreement attached hereto as Exhibit 1).

4. The agreement provides that in the event of lessee's default caused by failure to make payment, lessor's exclusive remedies include a) deactivating all or a portion of the

equipment <u>or</u> b) requiring lessee to return the equipment and pay the remaining balance of the rent due.

5. Mitel is wrongfully demanding accelerated lease payments from RFC in the amount of $211,653.57 in conjunction with the return of the leased equipment.

6. The agreement between RFC and Mitel does not allow Mitel to accelerate lease payments in the event of default.

7. Thus, RFC disputes the validity of Mitel's demand for $211,653.57 and so advised Mitel.

8. RFC states that Mitel has no valid basis for its demand of payment in the amount of $211,653.57.

9. Without conceding the actual amount to which Mitel may be entitled, RFC states that Mitel has explicitly stated that the rent balance due is no more than $28,331.94, not $211,653.57.

10. Mitel has refused to cease its collection efforts against RFC for accelerated lease payments.

11. As a direct and proximate result of Mitel's actions, RFC is being damaged and its credit rating is suffering.

**WHEREFORE**, RFC is entitled to a Declaratory Judgment as follows:

1. Ordering and adjudging that Mitel is not entitled to accelerated lease payments under the agreement at issue or any applicable law;

2. Ordering and adjudging that the $211,653.57 Mitel demands from RFC is not a valid or legal debt;

3. Ordering and adjudging that Mitel shall notify all credit bureaus and reporting agencies that the debt of $211,653.57, plus any additional late fees and finance charges accrued, if

any, asserted by Mitel is not a valid or legal debt;

4. Awarding to RFC such other relief as may be deemed just and equitable.

Respectfully submitted,

*[signature]*

Lance Chapin (0069473)
Beth J. Nacht  (0076290)
**Stein, Chapin & Associates LLC**
32 W. Hoster Street, Suite 200
Columbus, Ohio 43215
Telephone: 614-221-9100
Facsimile: 614-221-9272
*Attorneys for Plaintiff*

# INTER-TEL LEASING, INC.

## Lease Agreement

| LEASE NUMBER | INTER-TEL ACCOUNT NO. |
|---|---|
| 130809 | |

RENT COMMENCEMENT DATE: **Jan 1, 2008**

### SCHEDULE OF PAYMENTS

**BRANCH OFFICE ADDRESS:** 270 Cramer Creek Drive

| CITY: Dublin | COUNTY: Franklin |
|---|---|
| STATE: Ohio | ZIP: 43017 |

**60** MONTHLY PAYMENTS OF $ **5,923.02** (applicable taxes to be billed)

EXCEPT AS OTHERWISE INDICATED BELOW:
- ☐ QUARTERLY
- ☑ OTHER — payments deferred until January 2008  **LP 1$**

**LOCATION OF EQUIPMENT IF OTHER THAN BELOW:**

| CITY | COUNTY |
|---|---|
| STATE | ZIP |

_____ PAYMENTS OF $ _____ (applicable taxes to be billed)

PAYABLE AT SIGNING OF THE LEASE (check one)
- ☐ SECURITY DEPOSIT PER PARAGRAPH 5 $ _____
- ☐ FIRST _____ TOTAL PAYMENT $ _____
- ☐ OTHER

**EQUIPMENT DESCRIPTION:** STATED ON ATTACHED SCHEDULE 1

Dear Lessee: We have written this lease in plain language because we want you to fully understand its terms. Please read your copy of this lease carefully and feel free to ask us any questions you may have about it. We use the words *you* and *your* to mean the lessee indicated below. The words *we*, *us*, and *our* refer to the lessor indicated below. The words *the Branch* refer to the branch office of Inter-Tel Communications, Inc. or Inter-Tel DataCom, Inc. or Inter-Tel Technologies, Inc. with which you have entered into a separate agreement to install and maintain the equipment you are leasing.

1. **LEASE AGREEMENT:** You agree to lease from us and we agree to lease to you the equipment listed above, which you agree will be used for business purposes only. You promise to pay us the sum of all the rental payments indicated on the schedule above and/or attached, which sum can be calculated by multiplying the number of payments times the payment amount indicated on the schedule(s). You may request, from time to time, that additional equipment be added to this agreement. If we agree to add the equipment, you agree that the additional equipment added will become a part of this agreement and also agree to pay the additional rental payment due.

2. **ORDERING EQUIPMENT:** You request that we arrange delivery of the equipment to you by the Branch. If the equipment has not been delivered, installed, and accepted by you within forty-five (45) days from the date that we ordered the equipment, we may on ten (10) days written notice to you terminate the lease and our obligations to you. In the event that we have issued a purchase contract or order for the equipment, you agree that the purchase order or contract is acceptable to you. If you have entered into a purchase contract for the equipment, you agree to assign it to us, effective when we pay for the equipment.

3. **NO WARRANTIES:** We are leasing the equipment to you "AS IS". **WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE.** If the Branch or anyone else has made a representation or warranty to you as to the equipment or any other matter, you agree that any such representation or warranty shall not be binding on us, nor shall the breach of such relieve you of, or in any way affect, any of your obligations to us under this lease. If the equipment is not satisfactory for any reason, you shall make your claim only against the Branch and you shall nevertheless pay us all rent payable under this lease. So long as you are not in default under any of the terms of this lease, we transfer to you any warranties made to us by the Branch, manufacturer or supplier. You understand and agree that only an authorized officer of Inter-Tel Leasing, Inc. is authorized to waive or change any term or condition of this lease and no change is valid until and unless it is reduced to writing and signed by both parties. YOU AGREE THAT, REGARDLESS OF CAUSE, YOU WILL NOT ASSERT ANY CLAIM WHATSOEVER AGAINST US FOR LOSS OF PROFITS YOU EXPECTED TO MAKE OR ANY OTHER DIRECT, SPECIAL OR INDIRECT DAMAGES. You acknowledge that we shall not be responsible for any service, repairs, or maintenance of the equipment. We are not a party to any agreements between you and the Branch, and even if you have a dispute regarding any maintenance or service provided by the Branch, you will continue to pay us all payments due under this lease and all schedules to this lease.

4. **NON-CANCELLABLE LEASE:** This lease cannot be cancelled by you.

SEE SECOND PAGE FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS LEASE

ACCEPTED: INTER-TEL LEASING, INC., LESSOR
1140 WEST LOOP NORTH, HOUSTON, TEXAS 77055

BY: _[signature]_
TITLE: _____ DATE: 9/17/07

**LESSEE (FULL LEGAL NAME):** Residential Finance Corporation
401 North Front Street

**BILLING ADDRESS:**
| CITY: Columbus | COUNTY: Franklin | STATE: OH | ZIP: 43215 |

PHONE NO. (614) 324-4700   DATED **12/29/06**

### DELIVERY AND ACCEPTANCE OF EQUIPMENT

I HEREBY CERTIFY, ON BEHALF OF THE LESSEE, THAT ALL OF THE EQUIPMENT TO BE LEASED HAS BEEN DELIVERED AND INSTALLED. THE INSTALLATION AND ALL OTHER WORK NECESSARY FOR THE EQUIPMENT'S USE HAS BEEN SATISFACTORILY COMPLETED. THE DELIVERY DATE IS THE DATE THIS ACCEPTANCE IS SIGNED.

Signature: X _see attached_  DATE: 8/6/07
Print Name: _____
TITLE: _____

(THE UNDERSIGNED AGREES THAT THE EQUIPMENT SHALL BE USED FOR BUSINESS PURPOSES AND AGREES THAT NO MODIFICATION TO THIS LEASE WILL BE EFFECTIVE UNLESS MADE IN WRITING AND SIGNED BY BOTH PARTIES.)

BY X _[signature]_ SVP.   TITLE
AUTHORIZED SIGNATURE
Print Name: **DAVID K. STEIN**

### PERSONAL GUARANTY

I guarantee that the lessee will make all payments and pay all the other charges required under this lease when they are due and will perform all other obligations under the lease fully and promptly. I also agree that you may make other arrangements with the lessee and I will still be responsible for those payments and other obligations. You do not have to notify me if the lessee fails to meet all of its obligations under the lease. If lessee fails to meet all of its obligations, I will immediately pay in accordance with the default provisions of the lease all sums due under the original terms of the lease and will perform all other obligations of lessee under the lease. I will reimburse you for all the expenses you incur in enforcing any of your rights against the lessee or me, including attorney fees. If this is a corporate guaranty, it is authorized by the Board of Directors of the guaranteeing corporation. If this is a partnership guaranty, it is authorized under the partnership agreement. THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS. I AGREE AND CONSENT THAT THE COURT OF THE STATE OF TEXAS, HARRIS COUNTY OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION IN THAT COUNTY SHALL HAVE JURISDICTION AND SHALL BE PROPER LOCATION FOR THE DETERMINATION OF DISPUTES ARISING UNDER THIS LEASE. I agree and consent that you may serve me by registered or certified mail, which will be sufficient to obtain jurisdiction. I waive trial by jury in any action between us.

X _____
PERSONAL GUARANTOR SIGNATURE   PRINT NAME   SOCIAL SECURITY NUMBER   DATED

X _____
PERSONAL GUARANTOR SIGNATURE   PRINT NAME   SOCIAL SECURITY NUMBER   DATED

Rev 06/02   Page 1 of 2   SEP 1 3 2007   **EXHIBIT 1**   ILI-001

130809

5. **TERM OF LEASE:** The lease term will start on the date that any equipment is delivered to you or your agent ("the Commencement Date") and will continue until you have met all of your obligations under the lease. Advance rentals are not refundable if the lease does not begin for any reason. The payments of rent are payable periodically in advance as stated above or on any schedule to this lease. The first payment is due on the Commencement Date. You will be notified in writing if we change the date of your first payment. Thereafter, consecutive periodic payments will be due on the same day of each period indicated on this Agreement. All payments will be made to us at our address on this lease, or at another address, which we would designate in writing. Your obligation to pay rentals to us is unconditional and is not subject to any reduction, set-off, defense, or counterclaim for any reason whatsoever. You authorize us to insert serial numbers and other identification data about the equipment, as well as other omitted factual matters. If we accepted a security deposit from you, it will be held by us to secure your faithful performance of this lease, and it will be returned or applied as stated in Paragraph 14. You shall pay us a one time administrative fee (not to exceed $45.00) to reimburse us for our start-up administrative costs.

6. **ASSIGNMENT:** You may not sell, transfer, assign or sublease the equipment. We may, without notifying you, sell, assign or transfer this lease and ownership of the equipment; and you agree that if we do so, the new lessor will have the same rights and benefits that we now have, and the new lessor will not have to perform any of our obligations. You agree that the rights of the new lessor will not be subject to any claims, defenses or set-offs that you may have against us. However, any such assignment, sale, or transfer of this lease or the equipment will not relieve us of our obligations to you under this lease.

7. **OWNERSHIP AND QUIET ENJOYMENT:** We are the owner of the equipment and have title to the equipment. If any other person attempts to claim ownership of the equipment by asserting that claim against you or through you, you agree, at your expense, to protect and defend our title to the equipment. Further, you agree that you will at all times keep the equipment from any legal process or lien whatsoever, and you shall give us immediate notice of any lien whatsoever, and you shall give us immediate notice if any legal process or lien is asserted or made against the equipment. So long as you are not default under any of the terms in this lease, we agree that you shall quietly use and enjoy the equipment.

8. **CARE, USE AND LOCATION; LOSS OF EQUIPMENT:** You are responsible for installing and keeping the equipment in good working order and repair. You are responsible for protecting the equipment from damage, except for ordinary wear and tear, and from any other kind of loss while you have the equipment or while it is being delivered to you. Even if the equipment is damaged or lost, you agree to continue to pay rent. You will keep and use the equipment only at your address shown above, and you will only use it for business purposes and in compliance with all applicable laws. You will not make any alterations or additions to the equipment without our prior written consent (which we will not unreasonably withhold), nor will you permanently attach the equipment to your real estate. You agree that you will not remove the equipment from that address unless you get our written permission in advance.

9. **TAXES AND FEES:** You agree to pay when due all taxes relating to this lease. You also agree that we have the right each year to estimate the yearly personal property taxes that will be due for the equipment and that you will pay us the estimated taxes when we request payment. If we pay any of those taxes, you agree to reimburse us on demand. You also agree that we have the right to sign your name to any document for the purpose of filing, so long as the filing does not interfere with your right to use the equipment.

10. **INDEMNITY:** We are not responsible for any injuries or losses to you or any other person caused by the installation or use of the equipment. You agree to reimburse us for and to defend us against any claims for such losses or injuries. This indemnity shall continue even after the term of this lease has expired.

11. **INSURANCE:** You agree to keep the equipment fully insured against loss until you have met all your obligations under this lease. You agree to maintain at your expense, a general public liability insurance policy, covering both personal injury and property damage, from anyone who is acceptable to us and to provide us, on request, with certificates or other evidence of insurance acceptable to us. If any insurance proceeds are paid as a result of any such loss or damage to the equipment, you agree that such insurance proceeds shall be paid to us to satisfy your rental obligations under the lease. If the equipment is either lost or totally destroyed, and you are not in default under the terms of this lease, instead of continuing to pay us rent you have the option of paying us the then present value of both the unpaid balance of the remaining rent under this lease and the value of our residual interest in the equipment, each computed with a discounted rate of six (6%) percent per year.

12. **DEFAULT AND REMEDIES:** If you do not pay rent when due or if you break any of your promises under this lease, or you become insolvent, assign your assets for the benefit of your creditors, or enter (voluntarily or involuntarily) a bankruptcy proceeding, you will be in default. If your default is caused by failure to make any payment when due, we can, after ten (10) days written notice, enter your premises and deactivate all or a portion of the equipment, or require that you return the equipment to us and pay to us the remaining balance of all of the rental payments due under this lease at present value, using a six (6%) percent per year discount rate. If you fail to return the equipment to us, in addition we can also require that you pay to us our residual interest in the equipment at present value as noted above. You also agree to pay us interest on all sums due us from the date of default until paid at the rate of one and one-half (1-1/2%) percent per month, but only to the extent permitted by law. If your default is caused by your breaking any of your other promises under this lease, we shall be entitled to recover from you all damages caused by that type of default. We can also use any of the remedies available to us under the Uniform Commercial Code or any other law. If we refer this lease to an attorney for enforcement or collection, you agree to pay our reasonable attorney's fees of at least twenty (20%) percent of the remaining balance of all the rental payments, and actual costs. If we have to take possession of the equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the equipment. Although you agree that we are not obligated to do so, if we decide to sell the equipment, and we are able to sell the equipment for a price that exceeds the sum of (a) our cost of repossession and sale of the equipment and (b) the residual value of the equipment, present valued as calculated above, then we shall give you a credit for the amount of such excess. You agree that we do not have to notify you that we are selling the equipment.

13. **OTHER RIGHTS:** You agree that any delay or failure to enforce our rights under this lease does not prevent us from enforcing any rights at a later time. Both parties intend this lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. If this document is not found to be a lease, then you grant us a security interest in the equipment. You also give us the right to immediately file, at your expense, any Uniform Commercial Code ("UCC") financing statements or related filings, as well as the right to sign your name to any such filings that we make.

14. **REDELIVERY OF EQUIPMENT:** In the event you do not decide not to renew this lease, or purchase the equipment according to the terms of any Purchase or Renewal Option Letter that we have issued to you, then when this lease expires, or is earlier terminated, you shall allow us or our designated agent, upon three (3) days' notice, the right and ability, during normal business hours, to disconnect and remove the equipment. If upon expiration or termination, you do not immediately return the equipment to us, the equipment will continue to be held and leased by you on a month to month basis at the same rental rate in this lease. Upon expiration of your lease, and provided you have fulfilled all of your obligations to us under this lease, we will either refund your security deposit without interest to you or at your direction apply it towards the purchase of the equipment.

15. **LATE CHARGES:** If any part of a payment is not made by you within thirty (30) days of its stated due date, you agree to pay us a late charge of ten (10%) percent of each late payment, but only to the extent permitted by law. You agree to pay us the late charge not later than one month following the date the original payment was due.

16. **ENTIRE AGREEMENT; CHANGES:** This Lease contains the entire agreement between you and us and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed both by you and us.

17. **PARTY DISTINCTIONS:** You acknowledge that while we did purchase the equipment for lease to you, that we did not select, manufacture or supply the equipment. You further acknowledge the name of seller and branch has been provided to you, and your rights regarding maintenance and warranties are set forth in other agreements.

18. **MISCELLANEOUS:** In the event you fail to comply with any part of this lease, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay, plus all of our expenses in causing your compliance, shall become additional rent and shall be paid by you at the time of the next due rental payment. If any notices are required under this lease, they shall be sufficient if given personally or mailed to the address set forth in this lease by certified or registered mail, postage prepaid. This lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns. THIS LEASE SHALL BE BINDING WHEN ACCEPTED IN WRITING BY US AND SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, PROVIDED HOWEVER, IN THE EVENT THIS LEASE OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER THE LAWS OF THAT STATE THEN THE LAWS OF THE STATE WHERE THE EQUIPMENT IS LOCATED SHALL GOVERN. YOU AGREE THAT THE COURT OF THE STATE OF TEXAS FOR HARRIS COUNTY OR ANY FEDERAL DISTRICT COURT HAVING THE JURISDICTION IN THAT COUNTY SHALL HAVE JURISDICTION AND SHALL BE THE PROPER LOCATION FOR THE DETERMINATION OF ALL DISPUTES ARISING UNDER THIS LEASE. You agree and consent that we may serve you by registered or certified mail, which shall be sufficient to obtain jurisdiction. Nothing stated in this is intended to prevent us from commencing any action in any court having proper jurisdiction. You waive trial by jury in any action between us.

19. **UCC-ARTICLE 2A PROVISIONS:** You agree that this is a "Finance Lease" under Article 2A of the Uniform Commercial Code, that is, you acknowledge that: (a) we did not select the equipment, we purchased it for lease to you; and (b) you have been given the name of the Branch which supplied the equipment you are leasing from us. We hereby notified you that you have the rights under the agreements that you have with the Branch.

CUSTOMER INITIALS    DATE 12/28/06          LEASING INITIALS    DATE 9/17/07

Rev 06/02                                   Page 2 of 2                                      ILI-001

SEP 1 3 2007

## SCHEDULE 1 FOR
## RESIDENTIAL FINANCE CORPORATION  #130809

**TeleDirect Liberation System**
1   Lib 6000 System Software
1   Play Recorded Message
1   Liberation CT Server – PCI
1   ISDN PRI Interface – 23 trunks – PCI
1   ISDN PRI Interface – 46 trunks – PCI
2   T1 Tie-line interface – 48 trunks – PCI
1   Conference Resource Board – 5 resources
1   XML Web Services Interface

**Software Licenses and Options**
2   Campaign Manger
1   Dialog Wizard
37  Dialog Guide – Outbound
37  Dialog Guide – Universal
1   Third-Party Connect
1   Dynamic Campaign Blending
1   Inter-Tel Integration
1   Email Agent

**Third Party Hardware and Software Supplied by TeleDirect**
2   Net-Op Host/Guest, ver 8.0 – Single
1   Net-Op Gateway, ver 8.0
1   Net-Op Host, ver 8.0 50-Pack

**Professional Services**
1   Marketing Data Warehouse Setup
1   On-Site system installation
1   Liberation 6000 application design class
120 Hours for configuration of data exchange with the CRM system
    Via XML web Services

**System Warranty**
5 years of Customer Service of Software Support
5 years of Customer Service of Hardware Support

Customer _____

Date   12/28/06 _____

Inter-Tel _____

SEP 1 3 2007